CITIZENS FOR PRETRIAL JUSTICE v GOLDFARB

Docket No. 63739. Argued October 7, 1980 (Calendar No. 3).—Decided
    December 20, 1982.

    Citizens for Pretrial Justice, an unincorporated association, and
        five individual plaintiffs brought a class action against Charles
        Goldfarb and Irwin Goldfarb, owners of the Goldfarb Bonding
        Agency, and Carmen A. Mitchell, challenging the business
        practices of the defendants' bail bond agencies. The complaint
        prayed for a declaratory judgment that the defendants were
        unlawfully charging fees in excess of 10% for bail bonds and
        requiring collateral security which, taken alone or together
        with the fees, was greater than 10% of the face value of the
        bonds, and that the statute which allows bondsmen to revoke
        bonds and re-arrest the principals violates the Due Process
        Clause; a permanent injunction to prevent further charges and
        collateral in excess of 10% and to forbid revocations of bonds
        without hearings; and damages and exemplary damages for the
        overcharges. Barbara Cartwright, acting for Citizens for Pre-
        trial Justice, purchased a $500 bond from the Goldfarb Bonding
        Agency to secure the pretrial release of Buford Miller approxi-
        mately two months before the plaintiffs brought this action on
        November 12, 1974. The bonding agency charged her $55 for
        the bond and required $250 in collateral security. Charles Holt
        purchased a bond from the Goldfarb Bonding Agency on Febru-
        ary 22, 1970, to secure the pretrial release of Larry Powell.
        Powell's bond was revoked by the bonding agency the next day,
        and he was taken to the Wayne County jail until his bail was

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 22 Am Jur 2d, Damages § 1.
    51 Am Jur 2d, Limitation of Actions §§ 82, 102.
[2, 4] 8 Am Jur 2d, Bail and Recognizance § 74.
[3-6, 12] 59 Am Jur 2d, Parties §§ 71, 83.
[3-6, 8-12] 74 Am Jur 2d, Suretyship § 252 et seq.
[4] 59 Am Jur 2d, Parties § 54 et seq.
[5] 8 Am Jur 2d, Bail and Recognizance § 119.
[6, 12] 59 Am Jur 2d, Parties §§ 26-30.
[7] 8 Am Jur 2d, Bail and Recognizance § 24.
[11] 73 Am Jur 2d, Statutes §§ 145, 146.

again posted by another bonding agency. Edward Attee was arrested in New York, and his bond of $35,000 was obtained in April, 1974, by Willie Harris from the Goldfarb Bonding Agency for a fee of $5,500. The second annual premium on the bond became due on April 16, 1975, while the prosecutor was appealing the dismissal of the charges against Attee in the New York courts, and Attee did not have sufficient funds to pay the premium and feared the defendants Goldfarb would revoke his bond and take him into custody.

William Jones purchased a $5,000 bond from the Goldfarb Bonding Agency in November, 1972. He paid $550 for the bond and pledged his interest in his home as security on the bond. After the criminal matter was resolved, the bonding agency refused to release its claim on Jones' real property until he paid an additional fee of $160 for telephone calls. Cartwright, Holt, Attee, and Jones moved that they be allowed to intervene as parties plaintiff in the class action. The Wayne Circuit Court, George E. Bowles, J., defined the classes for the three substantive claims, with a six-year period of limitation on claims for excessive fees and collateral, certified the class action, permitted Cartwright, Holt, Attee, and Jones to intervene as parties plaintiff to insure adequate representation of the class, granted a declaratory judgment for the plaintiffs and a preliminary injunction to prevent the defendants from overcharging or summarily re-arresting a principal on a bond in a criminal case. William Jones settled his claim against the defendants, and defendant Carmen A. Mitchell died while the appeal was pending in the Court of Appeals. The Court of Appeals, D. E. Holbrook, P.J., and V. J. Brennan, J. (M. F. Cavanagh, J., dissenting as to the constitutional issue), modified the order of the trial court as to the procedural issues to apply the three-year statute of limitations on claims of excessive fees, and affirmed the decision that the defendants could not charge premiums or require collateral for bonds in criminal cases which together exceed 10% of the face value of the bond, but decided that the statute permitting summary re-arrest of the principal by the bondsman does not violate the Due Process Clause (Docket No. 26827). The parties appeal.

In an opinion by Justice Kavanagh, joined by Chief Justice Fitzgerald and Justices Williams, Levin, and Coleman, the Supreme Court *held:*

The bail bond statute unambiguously limits the fee a bondsman may charge to 10% of the face value of the bond, but was not intended to limit the right of the bondsman to take collateral security. The class in this case includes all persons who

within six years prior to the filing of the complaint purchased a bond from the defendants and paid fees exceeding 10% of the face value of the bond. Barbara Cartwright and Charles Holt may properly represent the class, but Edward Attee may not, because he is not a member of it. The decisions of the lower courts regarding the constitutionality of the statute providing for the revocation of bail are vacated because there was no plaintiff before the courts with standing to raise it.

1. The plaintiffs argue that the claims of overcharges and unconstitutional revocation of bonds are not claims for injuries to persons or property governed by the three-year statute of limitations, but are claims for pecuniary loss governed by the six-year statute of limitations for all other personal actions. Their reliance on that distinction is misplaced. Pecuniary loss is an element of damages that may flow from an injury to persons or property, or from breach of contract. The suffering of pecuniary damages does not determine the applicable statute of limitations. The plaintiffs' claims are not for traditional, primarily common-law, torts to which the three-year period of limitation applies. Thus, the residual six-year statute of limitations governing all other personal actions applies. Charles Holt purchased a bail bond and the bond was revoked in February of 1970. This action was brought in November of 1974, and therefore Mr. Holt is a member of the class and may represent it.

2. The fact that Barbara Cartwright's collateral had been returned to her before she moved to intervene in this action does not preclude her from bringing an action for damages during the time the collateral was held. However, because the bail bond statute was not intended to prohibit a bondsman from taking collateral security, there is no cause of action on the issue and she may not represent the class regarding the illegal taking of collateral. Ms. Cartwright has not alleged that she has ever had a bond revoked or has suffered an injury from revocation of a bond. Thus, she does not have an individual cause of action for the damages being sought and may not represent the class seeking damages for unconstitutional revocation of a bail bond. Ms. Cartwright alleged that she feared that the defendants would revoke the bond she purchased for Buford Miller. The general rule is that one person may not raise the denial of another person's constitutional rights, and under the facts of this case, there is no reason to digress from that rule. At the time Barbara Cartwright filed her motion to intervene, Buford Miller was no longer subject to the bond; apparently, the defendants never revoked Miller's bond while

he was subject to it. The defendants have not challenged Ms. Cartwright's right to represent the class regarding the issue of charges of fees in excess of the statutory maximum, and she may represent the class regarding that issue.

3. Edward Attee had a bond posted on his behalf and, not having purchased a bond for an excessive fee, is not a member of the class as to that issue. He also has not alleged that he gave the defendants any collateral security, so he may not raise that issue. Attee has not shown that the bond was revoked by the defendants, and he is no longer subject to the bond. Constitutional questions are not dealt with hypothetically or in the abstract. Attee did not show that he had been deprived of due process because of a bond revocation or that he was in immediate danger of such an injury. He merely showed that his bond was in danger of lapsing for nonpayment of the second annual premium. Consequently, Attee did not have standing to contest the constitutionality of the statute on revocation of bail bonds, and he is not a proper plaintiff to represent the class in this action.

4. The class in this case includes all persons who, within six years prior to the filing of the complaint, or subsequent to the filing, purchased a bail bond from the defendants and paid fees exceeding 10% of the bond's face value. Barbara Cartwright and Charles Holt may represent this class. None of the plaintiffs have standing to raise the issue of the constitutionality of the statute allowing unilateral revocation and re-arrest by the bondsman. It was error for the lower courts to address the issue and, therefore, the portions of the judgments of the trial court and the Court of Appeals which address it must be vacated.

5. The defendants argue that, because another statute operated to increase their costs by 10% of the bond in the event of forfeiture, they were entitled to charge plaintiff Cartwright 10% of the increased risk. In the case of a $500 bail bond the amount of their risk was $550, so their fee should be $55. However, the statutory term "face value" of the bond unambiguously means the amount of the bond. The term is clear and definite and would be easily understood even by those not trained in the law to mean the value of the bond. Therefore, there is no need for further judicial interpretation.

6. The statute authorizes a fee for executing a bond in a criminal case and limits the amount of such a fee. It does not specifically provide that giving the bondsman a security interest in collateral is included within the 10% fee permitted by the statute. Therefore, it is appropriate in construing the statute to look to analogous statutes. Posting a bond for a fee is

similar to loaning money and charging interest. The statutes which regulate the collection of fees and finance charges for small consumer loans, installment sales of motor vehicles, and pawnbrokers use language which is similar to the language of the bail bond statute and which has not been interpreted to prohibit the taking of collateral. The Legislature did not intend to prohibit bondsmen from taking a security interest in collateral in addition to the 10% fee.

The judgment of the Court of Appeals is modified as to the definition of the class of plaintiffs, affirmed as to the issue of excessive fees, reversed as to the issue of requiring collateral, and vacated as to the constitutional issue; and the case is remanded to the Wayne Circuit Court for further proceedings.

Justice Ryan, concurring in part and dissenting in part, would hold: 1) that a bail bondsman may not charge, accept, or receive any sum of money or property in excess of 10% of the face value of a bond, whether labeled "collateral" or not, and that the taking of excess collateral interferes with judicial discretion and authority to set reasonable bail, and 2) that either the purchaser of a bond or the person for whom the bond was purchased has standing to challenge an excessive bail bond fee.

1. The Penal Code provides that a bail bondsman may not charge, accept, or receive any sum of money or property in excess of 10% of the face value of a bond. To allow a bondsman to accept "collateral" or "security" in excess of 10% is contrary to the plain meaning of the statute. Analogies to consumer usury statutes to support such a practice is unavailing because, rather than merely providing protection for the consumer, the bail bond statute is designed to assure the fundamental constitutional right to reasonable bail. Additionally, the taking of excess collateral interferes with judicial discretion and authority to set reasonable bail by removing from the judge control over, or advance knowledge of, the amount of excess collateral a bondsman may require, directly affecting the reasonableness of the bail.

2. In most instances, a bond purchaser can properly be seen as the agent of the person for whom the bond is purchased. As a principal, the person for whom the bond is purchased has a right to sue upon the contract made by his agent. Double recovery cannot be permitted, but either the purchaser or the person released because of the bond should have standing to challenge an excessive fee.

88 Mich App 519; 278 NW2d 653 (1979) affirmed in part; reversed in part.

OPINION OF THE COURT

1. LIMITATION OF ACTIONS — DAMAGES — PECUNIARY LOSSES.

   The suffering of pecuniary damages does not determine the applicable statute of limitations because pecuniary losses are elements of damages that may flow from an injury to persons or property or from a breach of contract; where the injury complained of is not a traditional common-law tort, the residual six-year statute of limitations governing all other personal actions applies (MCL 600.5805[7], 600.5813; MSA 27A.5805[7], 27A.5813).

2. LIMITATION OF ACTIONS — BAIL — EXCESSIVE FEES — STATUTES — DUE PROCESS.

   An action seeking damages for charging fees, or requiring collateral, in excess of the amount permitted by statute for the execution of a bond in a criminal case is subject to the residual six-year statute of limitations for all other personal actions (MCL 600.5813; MSA 27A.5813).

3. PARTIES — STANDING — CLASS ACTION — BAIL — REVOCATION.

   A person who purchased a bail bond for another may not represent a class seeking damages for unconstitutional revocation of bond by a bail bond agency where the plaintiff does not allege ever having had a bond revoked or having suffered an injury because of revocation, but only alleges having feared that the bail bondsmen would revoke the bond purchased for the other person (GCR 1963, 208.1).

4. PARTIES — STANDING — CLASS ACTION — BAIL — EXCESSIVE FEES — STATUTES.

   Persons who have, in fact, paid a fee for a bail bond in excess of the statutory maximum fee are entitled to bring a class action to recover the excessive charge, but a person for whom a bond was purchased by another may not represent the class absent a showing that the person directly or indirectly paid the fee; in order to recover damages for a violation of a statutory duty, the plaintiff must belong to the class for whose protection the law was passed and must suffer an injury that the statute was designed to prevent (MCL 750.167b; MSA 28.364[2]; GCR 1963, 208.1).

5. PARTIES — STANDING — CLASS ACTION — BAIL — REVOCATION — DUE PROCESS.

   A person who merely showed that his bail bond was in danger of lapsing for nonpayment of the second annual premium did not have standing to represent a class in an action claiming that

the statute which permits bail bondsmen to revoke the bond and re-arrest the principal without a hearing violates the Due Process Clause because he did not show that he had been deprived of due process because of a bond revocation or that he was in immediate danger of such an injury (US Const, Am XIV; Const 1963, art 1, § 17; MCL 765.26; MSA 28.913; GCR 1963, 208.1).

6. PARTIES — STANDING — CLASS ACTION — CONSTITUTIONAL LAW.

Generally, one person may not raise the denial of another person's constitutional rights; therefore, a judgment in a class action which addresses the constitutionality of the statute which permits bail bondsmen to revoke a bond and re-arrest the principal without a hearing must be vacated where none of the plaintiffs have standing to raise the issue (GCR 1963, 208.1).

7. BAIL — FEES — STATUTES.

The statute which sets the maximum fee for a bond in a criminal case at 10% of the "face value" unambiguously means 10% of the amount of the bond (MCL 750.167b; MSA 28.364[2]).

8. BAIL — FEES — COLLATERAL — STATUTES.

The Legislature did not intend to prohibit bail bondsmen from taking a security interest in collateral in addition to the 10% fee permitted by statute for a bond in a criminal case (MCL 750.167b; MSA 28.364[2]).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY RYAN, J.

9. BAIL — BONDSMEN — FEES.

*A bail bondsman may not charge, accept, or receive any sum of money or property for a bond in excess of 10% of the face value of the bond (MCL 750.167b[3]; MSA 28.364[2][3]).*

10. BAIL — BONDSMEN — FEES — COLLATERAL.

*The taking by a bail bondsman of property as collateral or security for a bond in excess of 10% of the face value of the bond plainly violates the statutory prohibition against accepting or receiving any money or property in excess of 10% of the face value of a bond (MCL 750.167b[3]; MSA 28.364[2][3]).*

11. BAIL — BONDSMEN — FEES — COLLATERAL — JUDICIAL DISCRETION.

*Permitting bail bondsmen to take collateral for a bond in excess of 10% of the face value of the bond interferes with judicial discretion and authority to set reasonable bail and destroys the*

*legislative intent to provide an alternate system for meeting bail requirements where the defendant does not own or have access to any significant amount of property (MCL 750.167b[3]; MSA 28.364[2][3]).*

12. Bail — Bondsmen — Fees — Standing.

*A person who purchases a bail bond or the person for whom the bond is purchased has standing to challenge an excessive bail bond fee (MCL 750.167b[3]; MSA 28.364[2][3]).*

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes)* for plaintiffs.

*Zemke, Hirschhorn & Tukel, P.C.,* for defendants Goldfarb.

KAVANAGH, J. This complex class action was filed in November, 1974, by Citizens for Pretrial Justice and five named individuals to challenge the legality of the business practices of the defendants-appellants and cross-appellees Charles and Irwin Goldfarb (hereinafter referred to as defendants) and defendant Mitchell, owners of bail bond agencies.[1] The present plaintiffs-appellees and cross-appellants (hereinafter referred to as plaintiffs) are three named individuals who were permitted to intervene by the trial court after the suit was filed.[2]

## I. Procedural History of the Case

The plaintiffs raised three substantive issues: 1)

---

[1] Citizens for Pretrial Justice is an unincorporated, nonprofit association located in Wayne County. Defendant Mitchell died while this action was pending and no representative has joined in this appeal.

[2] The trial court by its order of November 21, 1975, granted the defendants' motion to dismiss as to all plaintiffs named in the pleadings dated April 3, 1975. William H. Jones, Barbara Cartwright, Edward Attee, and Charles Holt were permitted to intervene in the same order. William H. Jones has settled with the defendants and is no longer a party to this action.

Whether the defendants violated MCL 750.167b(3); MSA 28.364(2)(3)[3] by charging a fee greater than the 10% statutory maximum (Count I); 2) Whether the defendants violated MCL 750.167b(3); MSA 28.364(2)(3) by requiring collateral security which, either taken alone or together with the fee, exceeded the 10% limit (Count II); and 3) Whether MCL 765.26; MSA 28.913,[4] which allows bondsmen to unilaterally revoke the bail bond and re-arrest the principal, unconstitutionally deprives such individuals of liberty without due process of law (Count III). The plaintiffs sought a declaratory judgment on the merits, entry of a permanent injunction to prevent further overcharges and revocations, and damages.

After hearing argument on the issues raised in the complaint and in numerous motions filed by the parties, the trial court issued an opinion on October 1, 1975, and order on November 21, 1975. In addition to allowing the intervention and sub-

---

[3] The statute provides in pertinent part:

"It shall be lawful to charge for executing any bond in a criminal case, but no person engaged in the bonding business, either as principal or clerk, agent or representative of another, either directly or indirectly, shall charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding, which shall not exceed 10% of the face value of the bond for a 12 month period or any part thereof, from any person for whom he has executed bond, for any other service whatever performed in connection with any indictment, information or charge upon which the person is bailed or held."

[4] The statute provides in pertinent part:

"In all criminal cases where any person or persons have entered into any recognizance for the personal appearance of another and such bail and surety shall afterwards desire to be relieved from his responsibility, he may with or without assistance, arrest the accused and deliver him at the jail or to the sheriff of said county. In making such arrest he shall be entitled to the assistance of the sheriff, chief of police of any city or any peace officer. The sheriff or keeper of any jail in said county is authorized to receive such principal and detain him in jail until he is discharged in due course of law. Upon delivery of his principal at the jail by the surety or any officer, such surety shall be released from the conditions of his recognizance."

stitution of the presently named plaintiffs, the opinion and order (1) defined and certified the class action pursuant to GCR 1963, 208;[5] (2) determined that William H. Jones, Barbara Cartwright, Edward Attee, and Charles Holt were proper parties and would fairly insure the adequate representation of all members of the class; (3) found for the plaintiffs on the merits; (4) preliminarily enjoined defendants from taking premiums or collateral for a bail bond which together would exceed 10% of the face value of the bond for any bond written in Michigan and posted in a Michigan criminal case; and (5) preliminarily enjoined the defendants from revoking any bail bond posted in a Michigan criminal case and arresting their principal without prior court hearing.

On appeal, the Court of Appeals, addressing the procedural issues, (1) affirmed the trial court's certification of this action as a class action; (2) held that among plaintiffs Cartwright, Attee, and Holt, there was at least one proper representative of the class for each count of the complaint; and (3) redefined the class, finding that the applicable

---

[5] The trial court defined the class as follows:

"A. All those who purchased a bail bond from the defendants within six years from the date of filing of complaint herein or *[sic, and]* paid fees or posted collateral totaling more than ten (10%) percent of the face value of the bond written.

"B. All those for whom the defendants posted bond in return for fees and collateral in excess of ten (10%) percent of the face value of the bond posted within six years from the date of filing of the complaint herein.

"C. All individuals who purchased a bail bond and who paid fees or posted collateral totaling more than ten (10%) percent of the face value of the bond written subsequent to the filing of the bill of complaint.

"D. All individuals who purchased bonds and had them revoked under the revocation statute."

On appeal the parties agreed that the trial court intended the word "and" to follow the word "herein" in subgroup A rather than the word "or". 88 Mich App 519; 278 NW2d 653 (1979).

statute of limitations on plaintiffs' claims was three years and not six years.[6]

Addressing the merits of plaintiffs' claims, the Court of Appeals affirmed the trial court's decision that defendants could not, consistent with MCL 750.167b(3); MSA 28.364(2)(3), charge bail bond premiums which exceed 10% of the face value of the bond or take collateral of a value, either alone or together with the premium, which exceeds 10% of the face value of the bond. The Court of Appeals reversed the trial court's decision and held that MCL 765.26; MSA 28.913, which permits a bail bondsman to summarily revoke bond and re-arrest his principal, is constitutional. The Court of Appeals also held that the preliminary injunctions were erroneously issued.

The parties have appealed and cross-appealed the substantive issues involved in this litigation to our Court. In addition, the parties have appealed the definition of the class as set forth by the Court of Appeals, and the defendants have appealed that

[6] The Court of Appeals defined the class as follows:

"Group 'A' includes all those who, within three years prior to the complaint's filing, or subsequent thereto, purchased a bond from defendants and did one of the following:

"(1) paid fees exceeding 10% of the bond's face value; or

"(2) posted collateral exceeding 10% of the bond's face value; or

"(3) paid fees and posted collateral which together exceeded 10% of the bond's face value.

"Group 'B' includes all persons for whom a bond was purchased from defendants within three years prior to the filing of the complaint, or subsequent thereto, and for which purchase defendants charged as in 'A' (1), (2) or (3)."

This definition of the class was set forth in Judge CAVANAGH's dissenting opinion. It also included Groups "C" and "D" which included persons with claims for revocation of a bond pursuant to MCL 765.26; MSA 28.913. Because the majority of the Court of Appeals panel found this statute constitutional, persons with claims arising from bond revocation would not be within the class.

Court's determination that plaintiffs Cartwright, Holt, and Attee may properly represent the class.

After a thorough review of the briefs and record, we (1) hold that MCL 750.167b(3); MSA 28.364(2)(3), unambiguously limits the fee a bondsman may charge to 10% of the face value of the bond; (2) hold that MCL 750.167b(3); MSA 28.364(2)(3) was not intended to limit a bondsman's right to take collateral security; (3) redefine the class to include all those who within six years prior to the filing of the complaint or subsequent thereto purchased a bond from defendants and paid fees exceeding 10% of the bond's face value; (4) hold that Barbara Cartwright and Charles Holt may properly represent the class; (5) hold that Edward Attee may not represent the class because he is not a member of it; (6) vacate the lower courts' holdings regarding the constitutionality of MCL 765.26; MSA 28.913 because, there being no plaintiff before them with standing to raise it, the issue was not properly before them.

II. FACTS

A

On September 16, 1974, Barbara Cartwright purchased a bail bond from the Goldfarb Bonding Agency to secure the pretrial release of Buford Miller. She was charged $55 by the Goldfarb Bonding Agency for the $500 bond and pledged collateral of $250. After Buford Miller's case was resolved in Detroit Recorder's Court, the collateral was returned to Barbara Cartwright. In her motion to intervene, Barbara Cartwright alleged that because of her personal knowledge of incidents of revocation of bonds by agents of International

Fidelity Insurance Company, for which the defendant Goldfarb Bonding Agency is a district agent, she was afraid that defendants would revoke the bond of Buford Miller without any hearing, arrest him, and deliver him to the county jail.

## B

On February 22, 1970, Charles Holt purchased a bond from the Goldfarb Bonding Agency to secure the pretrial release of Larry Powell. Allegedly, the day after Mr. Powell's release, he and Mr. Holt were summoned to the office of the defendants to sign some papers. Instead, Mr. Powell's bond was revoked. He was arrested and taken to the Wayne County jail.[7] Mr. Powell later obtained his pretrial release through another bonding agency.

## C

On March 24, 1974, Edward Attee was arrested in New York. Bond was set at $35,000. In April, 1974, Willie Harris purchased a bond at the defendant's office in Detroit, paying a fee of $5,500 to obtain Mr. Attee's pretrial release.[8] On December 19, 1974, all charges pending against Mr. Attee in New York were dismissed. At the time Mr. Attee's motion to intervene was filed, the prosecutor's appeal was pending in New York courts. Because

[7] In Mr. Holt's motion to intervene and affidavit, he alleges that: (1) he was arrested with Mr. Powell; (2) he was not free on bond; and (3) he obtained his release from the jail within a couple of hours. Any claim Mr. Holt may have against the defendants for this incident does not arise out of the bond revocation and arrest statute because Mr. Holt was not a principal on a bond executed by the defendants.

[8] These facts are taken from Mr. Attee's motion to intervene and his affidavit in support of the motion. Plaintiffs' brief on appeal stated that Mr. Attee purchased the bond on his own behalf. Defendant's brief on appeal stated that Mr. Attee purchased the bond on behalf of Willie Harris.

he did not have sufficient funds to pay a second-year premium which was due on April 16, 1975, Mr. Attee alleged that he believed the defendants would revoke his bond and take him into custody.[9] He has not alleged that this occurred. At present, Mr. Attee is not subject to a bond executed by the defendants.

### III. DEFINITION OF THE CLASS AND REPRESENTATIVES OF THE CLASS

The plaintiffs argue that the Court of Appeals erred when it defined the class by reference to the three-year statute of limitations which governs actions to recover for injuries to persons and property (MCL 600.5805[7]; MSA 27A.5805[7]), rather than the six-year statute of limitations which governs all other personal actions (MCL 600.5813; MSA 27A.5813).[10]

Specifically, plaintiffs allege that the claims for statutory overcharges do not involve injuries to persons or property, but instead are claims for pecuniary loss. Plaintiffs' reliance on this distinction is misplaced. Pecuniary losses are an element of damages that may flow from an injury to persons or property or breach of contract. The suffering of pecuniary damages does not determine the applicable statute of limitations.

At the time this action was commenced, MCL 600.5805; MSA 27A.5805 provided:

"No person may bring or maintain any action to

---

[9] Mr. Attee had signed the bond agreement which previously had been entered into by Willie Harris.

[10] The Court of Appeals applied the three-year statute of limitations to the causes of action alleging statutory overcharges and to the alleged constitutional wrongs.

recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

"(1) The period of limitations is 2 years for actions charging assault, battery, and false imprisonment.

"(2) The period of limitations is 2 years for actions charging malicious prosecution.

"(3) The period of limitations is 2 years for actions charging malpractice.

"(4) The period of limitations is 2 years for actions against sheriffs charging misconduct or neglect of office by themselves or their deputies.

"(5) The period of limitations is 2 years after the expiration of the year for which a constable was elected for actions based on his negligence or misconduct as constable.

"(6) The period of limitations is 1 year for actions charging libel or slander.

"(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."

Section 5813 provides:

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

The present case does not involve an injury to person or property within the meaning of § 5805(7). That statute applies to traditional, primarily common-law, torts. See, *e.g., Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971); *Coates v Milner Hotels, Inc,* 311 Mich 233; 18 NW2d 389 (1945). The injury complained of by these plaintiffs, unlike those injuries to which this three-year limitation has been applied, is not a traditional

tort. Accordingly, the residual six-year statute of limitations governing all other personal actions, § 5813, applies to the present case. See, *e.g., Metzen v Dep't of Revenue,* 310 Mich 622; 17 NW2d 860 (1945); *Walper v Knowles,* 295 Mich 687; 295 NW 363 (1940).

The defendants assert that Charles Holt may not represent the class because he is not a member of it. We disagree. The facts indicate that Mr. Holt purchased a bond on February 22, 1970. This bond was revoked on February 23, 1970. This action was filed in November, 1974. Any cause of action Mr. Holt may have is subject to the six-year statute of limitation. MCL 600.5813; MSA 27A.5813.

The defendants assert that Barbara Cartwright may not represent the class regarding Count II (illegal taking of collateral) because at the time she filed her motion to intervene, her collateral had been returned to her. The return of the collateral to plaintiff Cartwright would not preclude an action for damages during the time the collateral was illegally held *(e.g.,* interest). We hold, however, that Barbara Cartwright may not represent a class regarding the illegal taking of collateral because in Part V of this opinion we determine that MCL 750.167b(3); MSA 28.364(2)(3) was not intended to prohibit a bondsman from taking collateral security. Therefore, on remand, there is no cause of action regarding this issue.

The defendants challenge Barbara Cartwright's right to represent the class regarding Count III (deprivation of due process during bond revocation). Plaintiff Cartwright has not alleged that she has ever had a bond revoked or suffered an injury from a bond being revoked, and so does not have an individual cause of action for the damages being sought. She may not represent the class

seeking damages for unconstitutional revocation of a bail bond because she is not a member of the class. See GCR 1963, 208.1; *Grigg v Michigan National Bank,* 405 Mich 148, 167, 170; 274 NW2d 752 (1979).

The plaintiff alleged that she feared the defendant. would revoke the bond she purchased for Buford Miller. The general rule is that one person may not raise the denial of another person's constitutional rights. *Mary v Lewis,* 399 Mich 401, 416; 249 NW2d 102 (1976). We are satisfied that under the facts of this case there is no reason to digress from the general rule. At the time Barbara Cartwright signed her motion to intervene on March 31, 1975, Buford Miller was no longer subject to the bond, his case having been resolved in the Recorder's Court on November 29, 1974. Apparently, the defendants never revoked Miller's bond while he was subject to it.

The defendants have not challenged Barbara Cartwright's right to represent the class regarding Count I (statutory overcharges). We affirm the determination of the Court of Appeals that she may represent the class regarding this issue.

The defendants also challenge the right of Edward Attee to represent the class. The pertinent facts indicate that Willie Harris purchased the bond which was posted on Mr. Attee's behalf. Mr. Harris allegedly paid fees in excess of the statutory maximum.

The trial court included within the class "[a]ll those *for whom the defendants posted bond* in return for fees and collateral in excess of ten (10%) percent of the face value of the bond posted within six years from the date of filing of the complaint herein". (Emphasis added.) The Court of Appeals included within the class "*all persons for*

*whom a bond was purchased* from defendants within three years prior to the filing of the complaint, or subsequent thereto, and for which purchase defendants charged" fees exceeding 10% of the bond's face value. (Emphasis added.) This was error.

In order to recover damages for a violation of a statutory duty, the plaintiff must belong to the class for whose protection the law was passed and must suffer an injury the statute was designed to prevent, *Bolden v Grand Rapids Operating Corp,* 239 Mich 318, 326-328; 214 NW 241 (1927). The injury that has been alleged in this case is the charge of a fee in excess of the statutory maximum. Only persons who have paid such a fee are entitled to bring an action to recover the excessive charge. The persons "for whom" the bond was purchased have suffered no damage because of the excessive fee.

We, therefore, redefine the class to exclude those persons for whom the bond was purchased absent a showing that such person directly or indirectly paid the fee. We hold that Mr. Attee is not a member of the class because he has not established that he suffered the injury resulting from the allegedly excessive fee paid by Willie Harris.

On appeal to this Court, defendants for the first time argue that Attee may not claim the protection of Michigan law because the contract to post bond was performed in New York and thus New York law governs. Without the benefit of lower court discussion, we decline to consider this argument.

The question remains whether Mr. Attee may represent the class on any other issue. He has not alleged that he gave the defendants any collateral

security, so he may not raise that issue. Mr. Attee has alleged that he believed that the defendants would revoke his bond because he could not pay the second-year premium.

Mr. Attee filed his motion to intervene on April 15, 1975. The premium for the second-year premium was due on April 16, 1975. Mr. Attee has not shown that the bond was revoked by the defendants. He is no longer subject to the bond.

Constitutional questions are not dealt with hypothetically or in the abstract. We conclude that Mr. Attee did not show that he had been deprived of due process because of a bond revocation or that he was in immediate danger of such injury. He merely showed that his bond was in danger of lapsing for nonpayment of the second-year premium. Consequently, Mr. Attee did not have standing to contest the constitutionality of the bond-revocation statute. We hold, therefore, that Mr. Attee is not a proper plaintiff in this action and may not represent the class.

To summarize, we have found that Barbara Cartwright and Charles Holt are the only proper plaintiffs in this action. They have a cause of action for fees paid to purchase a bail bond from the defendants which exceed the statutory maximum. Because of this and our other findings, we necessarily redefine the class as follows:

All those who, within six years prior to the filing of the complaint, or subsequent thereto, purchased a bond from the defendants and paid fees exceeding 10% of the bond's face value.

Barbara Cartwright and Charles Holt may represent this class.

IV. CONSTITUTIONALITY OF THE BOND REVOCATION
STATUTE

The plaintiffs seek a declaratory judgment that
MCL 765.26; MSA 28.913, which allows a bonds-
man to unilaterally revoke a bail bond and re-
arrest the principal, is unconstitutional.

In the preceding section of this opinion we have
determined that none of the plaintiffs have stand-
ing to raise this constitutional issue. We must,
therefore, decline to pass on the constitutionality
of the statute. We hold that it was error for the
lower courts to address the constitutionality of
MCL 765.26; MSA 28.913. Accordingly, we vacate
that portion of the lower courts' holdings which
deals with the constitutionality of the bond revoca-
tion statute.

V. INTERPRETATION OF MCL 750.167b(3); MSA
28.364(2)(3)

A. Excessive Fees

Plaintiff Cartwright alleges that the defendants
violated MCL 750.167b(3); MSA 28.364(2)(3) by
charging a fee of $55 to post a $500 bond. The
statute provides in pertinent part:

"It shall be lawful to charge for executing any bond
in a criminal case, but no person engaged in the bond-
ing business, either as principal or clerk, agent or
representative of another, either directly or indirectly,
shall charge, accept or receive any sum of money or
property, other than the regular prevailing fee for
bonding, which shall not exceed 10% of the face value
of the bond for a 12 month period or any part thereof,
from any person for whom he has executed bond, for

any other service whatever performed in connection with any indictment, information or charge upon which the person is bailed or held."

The plaintiff asserts that the meaning of the statute is plain, and that according to its terms the defendants were entitled to a fee of $50, 10% of the $500 bond.

The defendants respond that the term "face value" is capable of two or more constructions. They contend that "face value" should be interpreted to mean the amount of the bondsman's risk.

The defendants theorize that since another statute increased their costs in the event of forfeiture by 10%,[11] they were entitled to charge the plaintiff 10% of their increased risk. In this case the amount of their risk was $550, so their fee should be $55.

The Court of Appeals applied the "plain meaning rule" and held that the term "face value" unambiguously means the amount of the bond. 88 Mich App 519, 550; 278 NW2d 653 (1979). We agree.

Under the "plain meaning rule", if the language of a statute is unambiguous, there is no room for judicial construction. *Lansing v Lansing Twp,* 356 Mich 641, 648-649; 97 NW2d 804 (1959). Like the statutory language in that case, the term "face value" is "clear, definite, and would be easily understood by even those not trained in the law"

---

[11] The defendants rely on 1965 PA 203, §§ 13(2) and 13(3), which levied an assessment as an additional cost equal to 10% of every fine, penalty, and forfeiture imposed and collected by the courts for criminal offenses to be deposited in the law enforcement officers training fund. MCL 28.613; MSA 4.450(13). The Court of Appeals declared subsection (2) to be unconstitutional in *People v Barber,* 14 Mich App 395; 165 NW2d 608 (1968). Subsections (2) and (3) were repealed effective January 11, 1977. 1976 PA 422.

to mean the value of the bond. *Id.,* 649. There is no need for further judicial interpretation.

### B. Taking of Collateral

In addition to paying a $55 fee, plaintiff Cartwright pledged $250 in collateral with the defendants. The plaintiffs assert that the defendants violate MCL 750.167b(3); MSA 28.364(2)(3) when they require collateral security which either taken alone or together with the fee exceeds 10% of the face value of the bond.

For convenience, we repeat the pertinent statutory language:

"It shall be lawful to *charge* for executing any bond in a criminal case, but no person engaged in the bonding business * * * shall *charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding,* which shall not exceed 10% of the face value of the bond for a 12 month period." (Emphasis added.)

This statute authorizes a fee for executing a bond in a criminal case and limits the amount of such a fee. The statute does not specifically provide that giving the bondsman a security interest in collateral is included within the 10% fee. We must, therefore, analyze the statutory language to determine the legislative intent. To do so, it is appropriate to look to the language and interpretation of analogous statutes. See 2A Sands, Sutherland Statutory Construction (4th ed), § 53.03, p 346.

The defendants cite to us several analogous statutes where language similar to that of the instant statute is used and the language has not been interpreted to prohibit the taking of collateral. For instance, MCL 493.13(4); MSA

23.667(13)(4), which is part of legislation regulating small loans by consumer finance companies in Michigan, provides in pertinent part:

"In addition to the charges provided for in this act, a further or other amount shall not be directly *or indirectly charged,* contracted for, or *received* except the lawful fees, if any, actually necessarily paid out by the licensee to a public officer, for filing, or recording, or releasing in a public office a financing statement, an instrument securing the loan, or both, and for noting or releasing a lien or transferring a certificate of title under Act No. 300 of the Public Acts of 1949, as amended". (Emphasis added.)

MCL 492.118(a); MSA 23.628(18)(a), part of the Motor Vehicle Sales Finance Act, limits the finance charges by an installment seller of an automobile as follows:

"A seller licensed under the provisions of this act may *charge,* contract for, *receive,* or collect a finance charge, as defined in this act, on any installment sale contract covering the retail sale of a motor vehicle in this state which shall not exceed the rates indicated". (Emphasis added.)

The limiting language in these statutes has not been applied to prevent the seller or lender from taking a security interest in collateral to secure the loan.

The statute regulating pawnbrokers and limiting their rates, MCL 446.209; MSA 19.589, also uses the terms *charge* and *receive* and contemplates the taking of collateral in addition to the rates charged.

"No pawnbroker or agent or employee thereof shall make a loan upon any deposit, pawn or pledge at a rate of interest and *charge* or *receive* therefor in excess of

the amounts provided for in this act." (Emphasis
added.)

After reviewing the above statutes, we are satis-
fied that the Legislature did not intend to prohibit
bondsmen from taking a security interest in collat-
eral in addition to the 10% fee. Posting a bond for
a fee is similar to loaning money and charging
interest. Statutes regulating the latter contain
limiting language similar to the language found in
the statute limiting bondsmen's fees, and they do
not prohibit the taking of collateral.

Accordingly, we reverse the judgment of the
Court of Appeals on this point.

The decision of the Court of Appeals is modified
in part, affirmed in part, reversed in part, and
vacated in part. We remand to the Wayne Circuit
Court for proceedings consistent with this opinion.

FITZGERALD, C.J., and WILLIAMS, LEVIN, and
COLEMAN, JJ., concurred with KAVANAGH, J.

RYAN, J. *(concurring in part and dissenting in
part)*. This class action challenges the legality of
the practices of two bail bonding agencies. The
procedural and factual history of this case is set
forth in my brother's opinion, to which reference
is invited. I am unable to agree with the portions
of my colleague's opinion holding: (1) that a bail
bondsman may receive collateral in addition to the
10% fee authorized by MCL 750.167b(3); MSA
28.364(2)(3), and (2) that the only person with
standing to challenge an excessive bail bond fee is
the person actually delivering the fee to the bonds-
man. I concur with the reasoning and result of the
remainder of my brother's opinion.

## I

The lower courts correctly held that a bail bondsman may not charge, accept or receive *any* sum of money or property in excess of 10% of the face value of the bond. MCL 750.167b(3); MSA 28.364(2)(3):

"It shall be lawful to charge for executing any bond in a criminal case, but no person engaged in the bonding business, either as principal or clerk, agent or representative of another, either directly or indirectly, shall charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding, which shall not exceed 10% of the face value of the bond for a 12 month period or any part thereof, from any person for whom he has executed bond, for any other service whatever performed in connection with any indictment, information or charge upon which the person is bailed or held."

My brother's opinion allows the bondsman to charge, accept and receive money in excess of 10% if that additional money is labeled "collateral" or "security". In my view, such an interpretation is contrary to the plain language of the statute. While an argument can be made that the prohibition against "charging" over 10% is not violated when a bondsman takes collateral, he plainly does "accept or receive" money or property when collateral is taken.[1] If the collateral is in the possession of the bondsman, investment of the money for the

[1] The acceptance and receipt of money in excess of 10% is obvious where, as here, it is alleged that the defendant bail bonding agency demanded possession of cash collateral. For example, on or about September 16, 1974, Barbara Cartwright purchased a bail bond from the Goldfarb Bonding Agency in order to secure the pretrial release of Buford Miller. She was charged a $55 fee for the $500 bond. In addition, defendant Goldfarb required, as a condition precedent to posting the bond, an additional $250 cash as "collateral" or "security". I cannot comprehend how the payment of $305 cash for a $500

duration of the bond would result in the receipt of additional money or property for the bondsman and the correspondent loss of its use to the bond purchaser. Even a security interest in property possessed by the criminal defendant is "property"; if the bond should be forfeited and the collateral seized, the charge would clearly exceed 10% of the face value of the bond.

My brother finds support for the taking of collateral by analogizing to consumer usury statutes such as MCL 493.13(4); MSA 23.667(13)(4), MCL 492.118(a); MSA 23.628(18)(a), MCL 446.209; MSA 19.589. But the bail bonding statute is not merely a piece of consumer protection legislation; rather, it is designed to assure the fundamental constitutional right to reasonable bail. US Const, Am VIII; Const 1963, art 1, § 16. The statutes are not *in pari materia* and should not be construed as such.

In the consumer loan context, the borrower often utilizes the loan proceeds to purchase an item of personal property such as a car. In the bail bond context, the "borrower" purchases his freedom. In the former situation, the ability to repossess the car protects the lender. In the latter situation, the bondsman's risk is secured by his ability to arrest and deliver the defendant to the authorities. The security interest in the purchased property does not require additional wealth from the consumer, while the collateral required of a defendant does require additional financial re-

---

bail bond satisfies the crystal clear statutory mandate against charging, accepting or receiving money in excess of 10% of the face value of the bond, even if part of the money *might* be returned at a later time. Nor would I reach a different result if the collateral were in the form of a security interest in property rather than cash. The statute specifically forbids the acceptance or receipt of any money *or property* in excess of the 10% fee. The statute also forbids direct *or indirect* charges in excess of 10%.

sources. A legislative and judicial recognition that some defendants will not have the resources to post their own bond led to acceptance of a bail bonding system costing the defendant only 10% of the face amount and still assuring his appearance when necessary.[2] Requiring collateral above and beyond the 10% maximum thwarts that legislative objective; granting a security interest in consumer goods purchased with a loan does not similarly discriminate against indigent persons.

In addition, if a lender takes possession of cash "collateral" as a condition precedent to loaning money at the maximum rate of interest, the usury statutes *would* be violated. Either the "collateral" would be viewed as an interest-free loan to the lender with the fair market value of the loan considered a hidden interest payment, or else the amount of the loan would be reduced by the amount of the collateral retained by the lender. Since interest payments would be based on the stated loan amount rather than the actual loan amount, the usury statute would be violated.

Finally, I agree with the lower courts' conclusion that the taking of excess collateral interferes with the judicial discretion and authority to set reasonable bail. In setting reasonable bail, the trial judge has concluded that the criminal defendant ought to be able to obtain pretrial release upon payment of, at most, 10% of that amount for

[2] The defendants argue that the taking of collateral gives the defendant an important financial incentive to appear at trial. But the statute does not forbid the taking of collateral; it only forbids taking money or property exceeding 10% of the bond. A shrewd bondsman might well minimize bond forfeitures by charging a fee of less than 10%, with the balance paid as collateral. The total value of the money or property received simply cannot exceed 10%. If that amount is insufficient to assure the defendant's appearance, the bondsman need not write the bond; in the alternative, the trial court may require "additional security or other conditions" as are necessary. GCR 1963, 790.4(c)(2).

a surety bond. The sum total of reasonable bail plus a surcharge may well constitute excessive bail. *McDermott v San Francisco Superior Court,* 6 Cal 3d 693; 100 Cal Rptr 297; 493 P2d 1161 (1972). We are not persuaded by defendants' argument that trial judges are "well aware" of the practice of requiring collateral. The judge has no control over, or advance knowledge of, the amount of excess collateral the bondsman will require.[3] Further, conscientious trial judges attempt to set reasonable bail, not some less than reasonable amount based on the assumption that the bail bondsman will exact an undetermined surcharge. Hence, the judge cannot effectively exercise his or her discretion in making the crucial determination of the minimum amount of bail necessary to ensure a defendant's presence at judicial proceedings. Instead, that discretion is vested in the bondsman, who can arbitrarily require collateral security less than 100%, but in excess of the 10% fee. This construction of the statute would destroy the intent of the Legislature to provide an alternate system for meeting bail requirements where defendants do not own or have access to any significant amount of property.

## II

The circuit court defined the plaintiff class as including persons who purchased bail bonds from the defendants or for whom such bail bonds were purchased. The defendants did not appeal that determination to the Court of Appeals, nor did they argue in this Court that the person for whom

---

[3] The amount of collateral, plus the fee, will necessarily be less than 100% of the bond. If the defendant can post collateral worth 100% of the bail, he will not ordinarily go to a bondsman to pay an additional 10% fee when the collateral can be given to the court directly.

the bail bond was purchased lacked standing to challenge the excessive fee charged. Indeed, the defendants refer to a bail bond as "a contract between a criminal defendant (or another who purchases a bail bond on his behalf) and a bail bondsman". Yet my brother feels obligated to decide *sua sponte* that the only person with standing to challenge an excessive bail bond fee is the person actually delivering the fee to the bondsman, absent a showing that the prisoner directly or indirectly paid the fee. I think the issue should not have been reached; but, having been reached and resolved, I am compelled to express my disagreement with its resolution.

The interests of the incarcerated individual and the bond purchaser are identical, since both seek to obtain the prisoner's release for a cost not in excess of the allowable statutory maximum. I cannot agree that persons "for whom" bail bonds are purchased are not damaged by illegal bail bond overcharges. In most, if not all, cases, the bond purchaser can properly be seen as an agent for the prisoner. The principle has been "well settled and elementary", at least since 1876, that a principal has a right to sue upon a contract made by his agent, "whether known to be such or not". *Jenness v Shaw,* 35 Mich 20, 21 (1876). The principle was affirmed in *American Enameled Brick & Tile Co v Brozek,* 251 Mich 7; 231 NW 45 (1930). As a unanimous Court put it in *Grand Rapids Milk Producers Ass'n v McGavin,* 295 Mich 477, 481; 295 NW 232 (1940):

"There is no question about the proposition that an undisclosed principal may claim the benefit of a contract, maintain an action thereon, and enforce any

remedies which might have been pursued by the agent himself".

*A fortiori,* a disclosed principal, as here, may also enforce his agent's rights and remedies.

Individual cases might arise in which the incarcerated person does not pay the bond "premium" either directly to the purchaser or indirectly, by considering the money paid by the purchaser to be a loan. If the bond purchaser expects and receives no repayment from the prisoner, it might be appropriate to allow the purchaser rather than the prisoner to collect the refund from any overcharge.[4] However, it is manifestly unjust to dismiss Mr. Attee from the lawsuit on the basis that he has failed to show that he directly or indirectly paid the bail bond fee. Neither the defendants nor any of the lower courts have suggested such a requirement. If the Court insists on *sua sponte* imposing a new barrier to recovery in this lawsuit, at the very least it should allow the plaintiff an opportunity to amend his pleadings in order to allege that he "directly or indirectly" paid the fee. Even under my colleague's analysis, the result should be a remand as to plaintiff Attee rather than outright dismissal.

Clearly the principal and the agent cannot *both* obtain a refund of an excessive fee, but any such double recovery can be easily avoided by the trial court in its administration of the class action. While the end result may well be the same under either approach, it would be less confusing to leave the class definition intact. Any dispute between the co-plaintiffs as to who "actually paid" the

---

[4] However, even in a true "gift" situation, the person for whom the bond is purchased may have enforceable rights under a third-party beneficiary theory. MCL 600.1405; MSA 27A.1405. See, also, *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974).

excessive fee cannot absolve the defendants from liability. I would remand this case with instructions that either the purchaser or the person for whom the bond was purchased has standing to challenge an excessive bail bond fee, but that only one recovery should be allowed.

RILEY, J., took no part in the decision of this case.