55 F.3d 1126
 GARDEN CITY OSTEOPATHIC HOSPITAL, Plaintiff-Appellant,
v.
HBE CORPORATION; Hospital Building and Equipment Company,
Incorporated; Hospital Designers, Incorporated;
and Kummer Construction Company,
Incorporated, Defendants-Appellees.
 No. 94-1202.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 13, 1995.
Decided June 1, 1995.
 
 Jon Feikens, Gary T. Tandberg (argued and briefed), Feikens, Foster, Vander Male, Bellamy & Gilchrist, Detroit, MI, for Garden City Osteopathic Hosp.
 Steven R. Lefkofsky (argued and briefed), Donald K.S. Petersen, Petersen & Lefkofsky, Bloomfield Hills, MI, for HBE Corp.
 Steven R. Lefkofsky, Petersen & Lefkofsky, Bloomfield Hills, MI, for Hosp. Designers, Inc.
 Before: LIVELY, RYAN, and DAUGHTREY, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 In this diversity action under Michigan law, the plaintiff, Garden City Osteopathic Hospital (GCOH), seeks damages allegedly arising from construction work performed by the defendants, HBE Corporation and Hospital Designers, Inc. (HDI). The district court granted summary judgment to the defendants, reasoning that a Michigan statute of repose, Mich.Comp.Laws Ann. Sec. 600.5839, barred the plaintiff's claims. We find the statute of repose inapplicable, and REVERSE the entry of summary judgment.
 
 I.
 
 2
 Garden City Osteopathic Hospital is located in Garden City, Michigan. Sometime in the Fall of 1970, GCOH entered into a contract with Kummer Construction Co., the predecessor of HBE, to build some additions to the hospital. GCOH cannot now locate a signed copy of the contract; to prove the contract's terms, GCOH relies on a photocopy of a document that appears to be a contract between GCOH and Kummer, but is signed only by Kummer. Under the "contract," HBE served as the contractor for the construction work, and HDI served as the project's architect. The contract also incorporated several drawings and documents, including "Specifications dated September 2, 1970, Section 1 through 36," and "General Conditions Document A201," a standard form published by the American Institute of Architects. Section 12 of the Specifications, entitled "Lathing and Plastering," provided, in part:
 
 
 3
 Before beginning the work, this contractor shall examine all surfaces that are to be plastered and report to the Architect if these are found to be out of plumb, true or insecure, and shall be held strictly to a straight job throughout.
 
 
 4
 Furthermore, the General Conditions form included a warranty:
 
 
 5
 The Contractor warrants to the Owner ... that ... all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards may be considered defective.
 
 
 6
 General Conditions art. 4.5.1.
 
 
 7
 The work began in September 1970. In a letter dated February 23, 1971, an HDI architect, Fred Petry, warned Kummer that a west basement wall was experiencing "lateral movement" because the wall was built near a "frozen inclined plane." Petry also described a construction method that might prevent the other walls from similarly moving. Ultimately, the east basement foundation wall was built three inches out of plumb; that is, if one were facing the wall, the top of the wall would be three inches further away than the base of the wall. The basement foundation wall supported the walls of the first and second stories of the hospital, also built by HBE under the contract. In fact, the basement wall eventually supported a third-story wall built in 1980 by HBE and HDI under another contract with GCOH.
 
 
 8
 The basement wall's out-of-plumb condition was discovered years later. In 1990, GCOH decided to expand the hospital by constructing an addition adjacent to the building's east side. The project called for replacing the first floor's east wall with five columns. Before beginning the project, the new contractor visually inspected the basement wall, but did not detect the out-of-plumb problem. Apparently, a coat of plaster had been applied to the basement wall so that it appeared straight. In 1991, the new contractor discovered the out-of-plumb state when the contractor drilled a hole in the first floor. The contractor determined that the basement wall could not alone support the five columns. GCOH and the contractor decided to retain the five-column design, but added reinforcements around the basement wall.
 
 
 9
 In February 1992, GCOH sued HBE in Michigan state court. HBE removed the case to the United States District Court for the Eastern District of Michigan. GCOH amended its complaint by adding HDI as a defendant and alleging that HDI was owned by HBE as a corporate vehicle to provide architectural services. GCOH asserted five counts against both defendants with respect to the 1970 contract: (1) breach of contract; (2) negligent performance of a contract, (3) breach of express warranties of fitness, (4) silent fraud, and (5) fraud. GCOH claimed that the defendants had concealed the basement wall's out-of-plumb condition by plastering the wall so that it appeared straight.
 
 
 10
 On the defendants' motion for summary judgment, the district court held that Mich.Comp.Laws Ann. Sec. 600.5839, a Michigan statute of repose, barred GCOH's claims. As to HDI, the district court applied the original, 1967 version of section 600.5839(1). Relying upon a Michigan appellate court decision, the district court found that the original version of section 600.5839 applied to suits against architects by owners based on improvements to real property. Because section 600.5839 provides for a six-year repose period after the date of occupancy, the district court held that GCOH's claims against HDI expired six years after 1971, well before GCOH filed suit in 1992. As to HBE, the district court applied a different part of section 600.5839(1), and held that a ten-year repose period, running from the date of occupancy, applied to claims against HBE. Thus, the statute of repose barred GCOH's claims against HBE because the repose period expired ten years after 1971, again well before the plaintiff filed suit in 1992. The plaintiff timely appealed.
 
 II.
 
 11
 a. Standard of Review
 
 
 12
 We review a grant of summary judgment de novo and apply the same test as used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)).
 
 
 13
 b. Choice of Law
 
 
 14
 The parties have assumed that Michigan law governs, and because the contract was presumably executed and performed in Michigan, and any other alleged basis for recovery occurred in Michigan, it does appear that Michigan law governs. When deciding a diversity case under state law, a federal court must apply the law of the state's highest court. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from "all relevant data." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985). Relevant data include the state's appellate court decisions:
 
 
 15
 [W]e are mindful that an intermediate appellate court's judgment that announces a rule of law is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."
 
 
 16
 FL Aerospace v. Aetna Casualty and Sur. Co., 897 F.2d 214, 218-19 (6th Cir.) (quoting West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)), cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990). Finally, relevant data also include the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states. Angelotta v. American Broadcasting Corp., 820 F.2d 806, 807 (6th Cir.1987).
 
 III.
 
 17
 Our initial task is to determine whether section 600.5839 applies to GCOH's causes of action. Below, the parties focused their dispute on which version of section 600.5839, which has been amended several times, governs the causes of action. The most recent version of section 600.5839 serves as a statute of repose for
 
 
 18
 any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, ... against any state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement....
 
 
 19
 Mich.Comp.Laws Ann. Sec. 600.5839(1) (emphasis added). If section 600.5839 applies, then the statute of repose might bar the plaintiff's causes of action against both the contractor, HBE, and the architect, HDI. We think, however, that the threshold question is not which version of section 600.5839 applies to this suit, but whether any version of section 600.5839 applies. All versions of section 600.5839 have limited its applicability to "any action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death." (Emphasis added.) All agree that this case is not an "action to recover damages for ... bodily injury or wrongful death," and thus we must determine whether GCOH's causes of action are "to recover damages for any injury to property." We now turn to Michigan law for direction on how to classify causes of action for limitations period purposes.
 
 
 20
 In Huhtala v. Travelers Insurance Co., 401 Mich. 118, 257 N.W.2d 640 (1977), the Michigan Supreme Court sought to clarify its precedents regarding the classification of causes of action for limitations period purposes. One of the plaintiffs in Huhtala suffered injuries in a car accident; Travelers insured the car's owner. The victim alleged that a Travelers claims manager failed to deliver on his promise that the insurer would pay her an equitable settlement as soon as the insurer evaluated her condition. Id., 257 N.W.2d at 642. The Michigan Supreme Court decided that the victim's promissory estoppel claim was governed by the six-year contract statute of limitations found in Mich.Comp.Laws Ann. Sec. 600.5807(8):
 
 
 21
 No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued ..., he commences the action within the periods of time prescribed by this section.
 
 
 22
 ....
 
 
 23
 (8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.
 
 
 24
 (Emphasis added) (quoted in Huhtala, 257 N.W.2d at 644 n. 7). The insurer offered an alternative classification of the plaintiff's cause of action: the three-year tort statute of limitations found in Mich.Comp.Laws Ann. Sec. 600.5805(7) (recodified at Sec. 600.5805(8) (1978)), which contains the same injury to property requirement found in section 600.5839(1).
 
 
 25
 A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued ..., the action is commenced within the periods of time prescribed by this section.
 
 
 26
 ....
 
 
 27
 (8) The period of limitations is 3 years after the time of ... injury for all other actions to recover damages ... for injury to a person or property.
 
 
 28
 Mich.Comp.Laws Ann. Sec. 600.5805(1), (8) (emphasis added).
 
 
 29
 In choosing between the two limitations periods, the Michigan Supreme Court first pointed out that the promissory estoppel claim was " 'dependent on the existence of contract or contract principles.' " Huhtala, 257 N.W.2d at 644 (quoting Southgate Community Sch. Dist. v. West Side Constr. Co., 399 Mich. 72, 247 N.W.2d 884, 888 (1976)). Next, the court distinguished between those cases "[w]here the nature and origin of an action to recover damages for injury to persons or property is a duty imposed by law," and "[t]hose cases ... where the action is for breach of an express promise." Id. (emphases added). Although a case might involve an express contract, the contract statute of limitations will apply only where the promise that the plaintiff seeks to enforce is express, not implied by law. Id. at 646.
 
 
 30
 As examples, the court in Huhtala explained the holdings of four Michigan Supreme Court cases, and we burden this opinion with a short description of the holdings in those cases because they illustrate the analytical path we follow to reach our conclusion. In Coates v. Milner Hotels, Inc., 311 Mich. 233, 18 N.W.2d 389 (1945), a hotel guest sued an innkeeper for negligence and breach of implied warranty because an intoxicated person assaulted her in the hotel. The court in Huhtala explained why both claims were governed by the limitations period for injuries to persons or property, and not breach of contract:
 
 
 31
 Although the relationship between the innkeeper and guest was contractual, the source of the innkeeper's obligation was not an express promise but public policy: the law implies a covenant, coextensive with the duty imposed on a negligence theory, that an innkeeper will take appropriate steps to guard a guest against assault.
 
 
 32
 Huhtala, 257 N.W.2d at 644 (emphasis added). The court in Huhtala also described Baatz v. Smith, 361 Mich. 68, 104 N.W.2d 787 (1960), as a case similar to Coates involving an innkeeper's duty to protect guests, and one in which the court reached the same conclusion. Huhtala, 257 N.W.2d at 644-45. Next, the court in Huhtala discussed State Mutual Cyclone Insurance Co. v. O & A Electric Cooperative, 381 Mich. 318, 161 N.W.2d 573 (1968). In State Mutual, insurance companies, as subrogees of farmers, sued an electric company for supplying too much voltage and electrocuting the farmers' cattle. Again, the court in Huhtala explained: "The obligation of a public utility to supply electricity at an appropriate voltage (like the obligation of an innkeeper to protect his guests against assault) does not depend on the agreement of the parties but arises as a matter of law independent of the terms of their agreement." 257 N.W.2d at 645.
 
 
 33
 Finally, the court in Huhtala described Weeks v. Slavik Builders, Inc., 384 Mich. 257, 181 N.W.2d 271 (1970) (per curiam ), in which homeowners sued a contractor for breach of warranty. The contractor warranted that it would install cement roof tiles that would not "leak[ ] due to failure of the tile or its installation." Weeks v. Slavick Builders, Inc., 24 Mich.App. 621, 180 N.W.2d 503, 504 (1970). Although the tiles leaked and damaged the house's ceiling, id., the court in Weeks held that the action was "not one for damages for injuries to property within Sec. 5805," but rather for breach of warranty under Mich.Comp.Laws Ann. Sec. 600.5833, which governs breach of warranty claims, Weeks, 181 N.W.2d at 271. The court in Huhtala summarized:
 
 
 34
 Coates, Baatz, State Mutual, and Weeks are reconcilable. While there was an express contract in all four cases, the "promise" sought to be enforced in State Mutual (as in Coates and Baatz ) appears to have been implied by law, in contrast with Weeks where the promise was express.
 
 
 35
 257 N.W.2d at 645. In Coates, Baatz, and State Mutual, "the nature and origin of the claim sought to be enforced in those cases was not an express promise." Id. at 646 (emphasis added). Accordingly, the court in Huhtala concluded that the "nature and origin" of the victim's promissory estoppel claim was an "express promise and not a duty imposed by law." Id.
 
 
 36
 In Citizens for Pretrial Justice v. Goldfarb, 415 Mich. 255, 327 N.W.2d 910 (1982), the Michigan Supreme Court continued its emphasis on the nature and origin of the cause of action as the principal determinant of the applicable limitations period, rather than a characterization of the type of damages. The plaintiffs in Goldfarb sued bail bond agencies for charging them a higher price for bonds than permitted by statute. Id., 327 N.W.2d at 913. The state appellate court held that the plaintiffs' action was to recover for injuries to persons or property, and was governed by section 600.5805, while the plaintiffs countered that the claims were for "pecuniary loss." Id. at 914. The court in Goldfarb eschewed both positions, first rejecting the plaintiffs' distinction between "pecuniary loss" and injuries to persons or property: "Plaintiffs' reliance on this distinction is misplaced. Pecuniary losses are an element of damages that may flow from an injury to persons or property or breach of contract. The suffering of pecuniary damages does not determine the applicable statute of limitations." Id. at 914-15 (emphases added). Thus, the Michigan Supreme Court distinguished between the "type of damages" sought, which is not determinative for limitations purposes, and the "nature and origin" of the source from which the damages "flow[ed]"--an injury to property or a breach of contract--which is determinative. Apparently, no party asserted that the action in Goldfarb was a contract claim, and the court did not mention its potential applicability.
 
 
 37
 But the court in Goldfarb also held section 600.5805 inapplicable.
 
 
 38
 The present case does not involve an injury to person or property within the meaning of Sec. 5805(7). That statute applies to traditional, primarily common-law torts. The injury complained of by these plaintiffs, unlike those injuries to which this three-year limitation has been applied, is not a traditional tort.
 
 
 39
 Id. at 915 (emphasis added) (citations omitted). Ultimately, the court applied section 600.5813, which provides a residual limitations period of six years for "[a]ll other personal actions." Mich.Comp.Laws Ann. Sec. 600.5813.
 
 
 40
 Our review of these cases convinces us that the Michigan Supreme Court will examine the "nature and origin" of a claim to determine the applicable limitations period. The Michigan Supreme Court does not look to the type of damages, but rather to the source of damages. This approach is consistent with the statutory text of the various limitations periods. Each statute applies to "action[s] to recover damages," Secs. 600.5805(1), 600.5807, 600.5839(1); what differentiates sections 600.5805(1) and 600.5839(1) from 600.5807 is what the damages are sought "for":
 
 
 41
 Sec. 600.5805(1): "an action to recover damages for injuries to persons or property."
 
 
 42
 Sec. 600.5839(1): "any action to recover damages for any injury to property."
 
 
 43
 Sec. 600.5807: "any action to recover damages ... for breach of contract."
 
 
 44
 (Emphases added.) We now examine GCOH's claims, and attempt to determine the "nature and origin" of each claim.
 
 
 45
 a. "Breach of Contract" Cause of Action
 
 
 46
 Although inartfully drafted, GCOH's complaint does attempt to state five separate causes of action. Under its "breach of contract" action, GCOH alleges in Count I that its contract with HBE and HDI expressly provided that the construction would be performed in accordance with the drawings, specifications, and other contract provisions, and that the defendants breached the contract by failing to follow those documents. In Count I, GCOH also added that the defendants' "cosmetic concealment" of the nonconforming wall breached the "implied" warranty of good faith that exists in every contract. Finally, GCOH declares that "[a]s a direct and proximate result of HBE's breach of the express and/or implied terms of the Contract, GCOH has lost the benefit of its contract with the third-party contractor now performing additional improvements and has incurred substantial additional costs and delays in construction."
 
 
 47
 The nature and origin of the claim in Count I appears to be one for breach of contract governed by the limitations period in section 600.5807, and not for injury to property or persons under section 600.5839. GCOH alleges a variety of damages, but the limitations inquiry focuses on the nature and origin of the claim; Count I alleges that the defendants failed to perform the express promise to construct the improvement in conformity with the governing contract documents. Taking reasonable factual inferences in GCOH's favor, the purported photocopy of the "contract" does state that "[t]he Contractor shall perform all the Work required by the Contract Documents," which included numerous drawings, specifications, and the General Conditions document. One of the incorporated drawings provided that the contractor shall examine surfaces to be plastered and "report to the Architect if these are found to be out of plumb, true or insecure, and shall be held strictly to a straight job throughout."
 
 
 48
 Accordingly, we conclude that the nature and origin of the cause of action in Count I is breach of contract. Applying the distinction devised in Huhtala, the claim involves the breach of an express promise, not of a duty implied by law. Furthermore, like the promissory estoppel claim in Huhtala, the claim in Count I is dependent on the existence of a contract and contract principles. Section 600.5807(8) provides the limitations period for Count I.
 
 
 49
 Specifically, section 600.5807(8) provides for a six-year limitations period for breach of contract actions, starting from the date that the claim "accrued," Sec. 600.5807. Breach of contract actions accrue "at the time of the asserted breach of contract." Huhtala, 257 N.W.2d at 646; see also Echols v. Chrysler Corp., 633 F.2d 722, 726 (6th Cir.1980); Proctor & Schwartz, Inc. v. United States Equip. Co., 624 F.2d 771, 773 (6th Cir.1980). Thus, GCOH's breach of contract claim accrued sometime in 1971, when the defendants constructed the wall. Although the six-year limitations period would normally bar GCOH's breach of contract claim, GCOH has alleged that Mich.Comp.Laws Ann. Sec. 600.5855 removes the bar because the defendants fraudulently concealed the existence of the claim.
 
 
 50
 Section 600.5855 provides:If a person who is or may be liable for any claim fraudulently conceals the existence of the claim ... from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim ..., although the action would otherwise be barred by the period of limitations.
 
 
 51
 GCOH asserts that HBE and HDI fraudulently concealed the breach of contract cause of action, thus entitling GCOH to two years from the date of discovery to file the claim. GCOH discovered the out-of-plumb condition in 1991 and sued in 1992. The district court did not consider the fraudulent concealment argument because the court correctly understood that section 600.5855 authorizes filing if the action would otherwise be barred by a limitations period; the section does not authorize filing if a repose period bars the action. The district court believed that a statute of repose barred all of GCOH's causes of action, including the contract cause of action, and thus did not address fraudulent concealment. Because we have concluded that the "breach of contract" cause of action is governed by section 600.5807(8), which provides a limitations period rather than a repose period, summary judgment was inappropriate without considering the fraudulent concealment argument.
 
 
 52
 b. "Negligent Performance of a Contract" Cause of Action
 
 
 53
 In Count II, GCOH alleged that the defendants owed a duty to perform the contract "in a skillful, careful, diligent and workmanlike manner." GCOH further alleged that the defendants breached the duty "by causing an exterior foundation wall to be constructed in a manner that is non-conforming with the architectural drawings and specifications." Finally, GCOH repeated in Count II the allegation of damages in Count I.
 
 
 54
 Michigan law limits the existence of actions for "negligent performance of a contract." In Clark v. Dalman, 379 Mich. 251, 150 N.W.2d 755 (1967), the Michigan Supreme Court explained the limited circumstances that give rise to an action for negligent performance of a contractual duty. The court first noted that "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." Id., 150 N.W.2d at 759-60. The duty of care can "arise out of a contractual relationship,"
 
 
 55
 [b]ut it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care.... This being so, the existence of a contract is ordinarily a relevant factor ... to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based.
 
 
 56
 Id. at 760 (emphasis added).
 
 
 57
 Thus, Michigan law "is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." Brock v. Consolidated Biomedical Lab., 817 F.2d 24, 25 (6th Cir.1987). The tort of negligent performance of a contractual duty must involve a relationship that " 'would give rise to a legal duty without enforcing the contract promise itself.' " Id. (emphasis added) (quoting Hart v. Ludwig, 347 Mich. 559, 79 N.W.2d 895, 898 (1956) (quoting W. Prosser, Handbook of Torts, Sec. 33 at 205 (1st ed. 1941))). For example, in Clark, a contractor repaired a city's water storage tank and applied a slippery substance on the tank's ladder and surface, knowing that an engineer's employee would later climb into the tank to inspect the project. 150 N.W.2d at 757-58. The inspector fell off the ladder and suffered injuries. Id. at 758. The Michigan Supreme Court allowed the inspector's negligence action to continue based on "[t]he general duty of a contractor to act so as not to unreasonably endanger the well-being" of anyone lawfully on the project site. Id. at 760. The contract's existence might have created the relationship out of which the contractor's duty of care arose, that is, provided the "occasion" for the existence of the duty, but the common-law duty of care had an independent existence.
 
 
 58
 For purposes of determining the applicable limitations period, Michigan law commands that we look to the "nature and origin" of the claim in Count II. Clark's limit on actions for negligent performance of a contract illuminates the limitations inquiry. Count II merely alleges that the defendants' lack of care "caus[ed] an exterior foundation wall to be constructed in a manner that is non-conforming" with the contract. That is simply a breach of contract claim. Without enforcing the contract promise, GCOH and the defendants have no relationship that gives rise to a legal duty. GCOH does not assert the existence of some duty of care apart from the contractual duty. Accordingly, we conclude that, because Count II is a breach of contract claim like Count I, Count II is likewise governed by section 600.5807(8). Like Count I, Count II--so construed--might not be time-barred in light of the alleged fraudulent concealment.
 
 
 59
 c. "Breach of Express Warranty of Fitness" Cause of Action
 
 
 60
 In Count III, GCOH alleged that the defendants "breached the express warranty of fitness by failing to construct an exterior foundation wall in conformity with architectural drawings and specifications." As in Weeks v. Slavik Builders, Inc., 384 Mich. 257, 181 N.W.2d 271, discussed supra, such a claim is not one for injury to persons or property. This claim's "nature and origin" is in the contract, an alleged express promise of fitness. Accordingly, the claim in Count III is governed by the breach of contract limitations period in section 600.5807(8), not the injury to persons or property limitations period in section 600.5839.
 
 
 61
 An action for breach of a warranty of fitness accrues according to the so-called "discovery" rule. Section 600.5833 provides: "In actions for damages based on breach of a warranty of quality or fitness the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." (Emphasis added.) Here, the alleged breach of the warranty of fitness was not reasonably discoverable, according to GCOH, until GCOH began the most recent hospital additions in 1991. From that date, under section 600.5807(8), GCOH had six years to sue for the alleged breach of the fitness warranty. If GCOH can prove that the alleged breach was not reasonably discoverable until 1991, then GCOH timely filed the warranty cause of action. Just as the issue of fraudulent concealment must be considered by the district court, it remains for the district court to consider whether GCOH's assertions of reasonable discovery can survive summary judgment.
 
 
 62
 d. "Silent Fraud" and "Fraud" Causes of Action
 
 
 63
 In Count IV, GCOH alleged that the defendants' failure to disclose the nonconformity of the wall constituted silent fraud. In Count V, GCOH alleges that the defendants' plastering of the out-of-plumb wall so as to appear straight constituted an affirmative misrepresentation, or fraud. Under Michigan law, where a fraud claim does not involve "injuries to specific property," Sweet v. Shreve, 262 Mich. 432, 247 N.W. 711, 712 (1933), the residual statute of limitations, Sec. 600.5813, applies to the fraud claim, Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir.1992).
 
 
 64
 Under section 600.5813, a claimant has six years to file the claim after accrual of the action. In Van Sickle, we held that the "discovery accrual standard" can apply to Michigan fraud actions, id. at 239, but that the applicability of the discovery rule "depends on a case-by-case analysis, not on adherence to a static rule," id. at 238. Whether to use the discovery rule depends in part on whether starting the limitations period when the fraudulent act occurred would extinguish the claim before some injury occurred that the plaintiff could or should discover. Id. In addition, the applicability of the discovery rule in fraud actions depends on whether its use would defeat the policies furthered by statutes of limitations, policies such as encouraging plaintiffs to pursue claims diligently and protecting defendants from stale claims. Id. at 239.
 
 
 65
 At this stage of the case, we need not decide whether a discovery rule is appropriate in this instance. On remand to the district court, if GCOH's fraudulent concealment claim survives summary judgment, then GCOH's fraud causes of action were timely filed regardless of whether the causes of action accrued when reasonably discoverable or when the allegedly fraudulent acts occurred. GCOH filed the fraud causes of action in 1992. If GCOH's fraud claims accrued when discovered in 1991, then GCOH had six years after 1991 to file. If GCOH's fraud claims accrued in 1971, then GCOH still filed timely because fraudulent concealment afforded GCOH two years to file after discovery in 1991. Accordingly, we refrain from deciding the issue. If the district court finds that the fraudulent concealment claim does not survive summary judgment, then the district court must address which accrual rule applies to the fraud causes of action.
 
 IV.
 
 66
 By resolving the limitations questions on the obligatory threshold issue of whether any version of section 600.5839 applies to this case, we refrain from addressing a myriad of issues raised by the parties: section 600.5839's apparent dual nature as serving both a limitations and repose function, O'Brien v. Hazelet & Erdal, 410 Mich. 1, 299 N.W.2d 336, 341 (1980); whether the original version of section 600.5839 did not apply to suits brought by the owners of improvements, City of Marysville v. Pate, Hirn & Bogue, Inc., 154 Mich.App. 655, 397 N.W.2d 859, 861 (1986), and if it did not apply to such suits, whether it does now, given the state legislature's recent enactment, Sec. 600.5805(10), regarding the limitations period applicable to real property improvements, Michigan Millers Mutual Insurance Co. v. West Detroit Building Co., 196 Mich.App. 367, 494 N.W.2d 1, 4 (1992).[1] None of the answers to these questions alters section 600.5839(1)'s limited applicability to actions "to recover damages for any injury to property."
 
 
 67
 In summary, we conclude that section 600.5839 applies only to an action to recover damages for injury to persons or property, not to all actions against an architect or contractor for damages resulting from work done by them. Furthermore, we hold that Count I is a breach of contract cause of action governed by section 600.5807(8), and is timely filed if GCOH can prove fraudulent concealment under section 600.5855. Count II is also a breach of contract cause of action, although the count is labeled as a negligent performance of contract claim. This claim is the same as Count I, and is thus timely filed if Count I is timely filed, but can provide for no more in damages than Count I can. Count III is a breach of a warranty of fitness cause of action, that is, a breach of contract cause of action, governed by section 600.5807(8), and is timely filed if GCOH can prove that the cause of action was filed within six years of accrual, applying the discovery rule. Counts IV and V, the fraud claims, are causes of action that are not actions for injuries to persons or property, and thus are governed by the residual limitations period in section 600.5813, and are timely filed if GCOH can prove fraudulent concealment.
 
 V.
 
 68
 We REVERSE the entry of summary judgment and REMAND for proceedings consistent with this opinion.
 
 
 
 [1]
 Section 600.5805(10) directs that section 600.5839 will provide the limitations period "for an action against a state licensed architect ... or contractor based on an improvement to real property," but section 600.5805(1) still limits section 600.5805(10) to actions "to recover damages for injuries to persons or property."