AMERICAN AND FOREIGN INSUR-ANCE COMPANY, as subrogee of Luurtsema Development Company and ALTL, Inc., Plaintiff–Appellant,

v.

William F. BOLT, d/b/a Bolt Construction Company, Defendant–Appellee.

No. 95–2273.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1996.

Decided Feb. 13, 1997.

Rehearing Denied March 11, 1997.

Thomas G. Mattson (argued and briefed), Robins, Kaplan, Miller & Ciresi, Chicago, IL, for plaintiff–appellant.

Phillip K. Yeager (argued and briefed), Stephen P. Willison, Morrison, Mahoney & Miller, Grand Rapids, MI, for defendant–appellee.

Before: KEITH, MERRITT, and SUHRHEINRICH, Circuit Judges.

KEITH, J., delivered the opinion of the court. MERRITT, J. (p. 161), delivered a separate concurring opinion.
SUHRHEINRICH, J. (pp. 161–62), delivered a separate dissenting opinion.

KEITH, Circuit Judge.

Plaintiffs appeal from a decision of the district court which granted judgment as a matter of law in favor of the defendant on a negligence claim. For the reasons stated below, we **REVERSE** and order that the jury's verdict on that issue be reinstated.

## BACKGROUND

This case is an action for damages based on theories of breach of contract, breach of implied warranty of good workmanship and negligence arising from the collapse of a warehouse roof under a large accumulation of snow and ice. In 1988, ALTL, Inc., plaintiff's subrogor, elected to build additional warehouse space by placing a pre-engineered metal building adjacent to an existing, shorter building. It is undisputed that the first set of plans drawn up for the project failed to note that the disparity in height created a potential "Canadian snow load" problem. The term "Canadian snow load" refers to the fact that the higher roofline of the new building would result in a heavier load of snow and ice accumulating on the lower roof, especially at the joint between the buildings. There is some dispute about which of the consultants whom ALTL employed brought this issue to the attention of The Architectural Group ("TAG"), the firm drawing up the plans, but regardless, a note was added to the plans indicating that this problem required that the lower roof be strengthened. The notation reads: "[r]einforce existing roof in this area w/additional purlins[1] between existing to support extra snow load." Joint Appendix ("Jt.App.") at 224.

These plans, with the snow load notation, were sent to William Bolt ("Bolt"), the defendant-appellee, who bid on the project and contracted to construct the building. The parties dispute whether further instructions on the roof strengthening project were ever issued to Bolt. Bolt claims that he requested and received further oral instructions about the installation of the purlins from TAG, but TAG denies that such instructions were given. Regardless, Bolt proceeded according to the oral instructions that he claims to have received, while admitting that he knew that these instructions dictated an improper manner of installing the additional purlins. William Bolt, Trial Transcript ("Trial Tr.") at 135, 152, Vol. II, 8/8/95. The new purlins were placed between the original purlins and bolted to the existing frame of the building utilizing a "gusset plate", rather than being bolted to the roof deck as the original purlins had been. Yet, despite Bolt's statement that he improperly installed the additional pur-

---

1. Purlins are metal devices which help increase the bearing capacity of a roof. In the original construction, the purlins were affixed to the roof deck before the insulation and rooftop were attached. Additional purlins cannot be attached to the roof deck after the roof is assembled without removing the roof and disassembling it.

lins, Robert Johnson, plaintiff's expert and the person who made the notation on the plans regarding the additional support necessary for the lower roof, acknowledged at trial that the manner in which Bolt affixed the purlins complied with his snow load notation. He stated that "[i]n a general sense, that's what you would have expected them to do." Robert Johnson, Trial Tr. at 75, Vol. III, 8/10/95.

In early 1994, inclement weather resulted in a large accumulation of snow/ice/slush on the roof of the lower building, culminating in its collapse. The collapse resulted in property damage in the amount of $210,980.89. American and Foreign Insurance Co. ("American") indemnified ALTL for losses relating to the roof collapse pursuant to ALTL's insurance policy. American then commenced the instant suit against Bolt in the United States District Court for the Western District of Michigan, Southern Division on May 26, 1994 seeking to recover the amount by which it had indemnified ALTL.

At the close of American's case, Bolt moved for a directed verdict. The court took the motion under advisement and the trial continued until the jury rendered a verdict. The jury found that Bolt had breached neither the contract nor the implied warranty of good workmanship. However, the jury did find that Bolt had been negligent, and that his negligence was the proximate cause of the roof collapse. Following the jury decision, Bolt renewed his earlier motion for a directed verdict, which the district court treated as a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). On October 19, 1995, the district court[2] entered a judgment for Bolt on the negligence claim holding that no cause of action for negligence lay against him. American now appeals this decision and asserts that the district court's decision was erroneous.

**2.** This case was referred to Magistrate Judge Rowland at the pre-trial stage, with the consent of the parties. The Magistrate acted for the district court and oversaw all proceedings in the case from that point.

**3.** While cognizant that recent changes to the Federal Rules term motions under both Fed. R.Civ.P 50(a) and (b) motions for judgment as a

## DISCUSSION

The Magistrate's decision to grant judgment notwithstanding the verdict ("JNOV")[3] was predicated on two independent theories. However, this Court finds nothing in the opinion below indicating which ground was dispositive, and further finds that neither theory was sufficient to support the district court's decision to grant JNOV.

### A. Standard of Review

A circuit court reviewing a district court's decision to grant judgment as a matter of law must utilize the same standard applied by the district court, *i.e.*, the circuit court must conduct a *de novo* review. *Monette v. AM–7–7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991). The standard for granting JNOV requires a finding that "viewing the admissible evidence most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion." *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983). Another formulation of this standard states that sufficient evidence for submission to the jury will be found "unless, when viewed in the light of those inferences most favorable to the non-movant, there is either a complete absence of proof on the issues or no controverted issue of fact upon which a reasonable person could differ." *Monette*, 929 F.2d at 280.

### B. Adoption of Illinois Law

One basis of the Magistrate's decision to grant JNOV was the decision of an Illinois appellate court in *Georgetown Township High School v. Hardy*, 38 Ill.App.3d 722, 725, 349 N.E.2d 88, 91 (1976). The Magistrate erred in adopting Illinois law as dispositive precedent on the negligence issue. The *Georgetown Township* decision held that a contractor cannot be held liable for negli-

matter of law, for purposes of perfect clarity in differentiating the standards under these separate subsections of Rule 50, this Court will fall back upon the older terms, referring to motions made pursuant to Rule 50(a) as motions for directed verdict and Rule 50(b) motions as motions for JNOV, or judgment non obstante verdicto.

gence if he fulfilled his duty in completing the work as specified by the plans or designs given to him. The Magistrate concluded, without explanation, that a Michigan court would adopt this rule. However, a review of Michigan law on contractor negligence demonstrates that Michigan law affords American a cause of action for negligence against Bolt.

■ This Court has laid out the analysis a judge must perform before adopting a standard derived from the caselaw of another jurisdiction:

> If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority" rule, what the state's highest court would decide if faced with the issue.

*Grantham and Mann v. American Safety Prods., Inc.,* 831 F.2d 596, 608 (6th Cir.1987). The Magistrate's opinion summarily states his conclusion that Michigan would adopt the rule enunciated in *Georgetown Township,* but fails to specify any sources consulted or any analysis which would lead him to this decision. This type of summary statement, which completely lacks any form of support or explication of reasoning, fails to meet the standard for adoption of foreign law enunciated in *Grantham.*

■ In fact, a very rudimentary search of Michigan law reveals that the Michigan Supreme Court has long held that a contractor can be held liable for negligence so long as he has breached some duty separate from those duties undertaken as part of the construction contract. *Ferrett v. General Motors Corp.,* 438 Mich. 235, 239–42, 475 N.W.2d 243, 245–47 (1991); *Hart v. Ludwig,* 347 Mich. 559, 562–5, 79 N.W.2d 895, 897–899 (1956); *Chase v. Clinton County,* 241 Mich. 478, 496–87, 217 N.W. 565, 567–68 (1928). The standard for differentiating the two situations requires that there be some type of misfeasance to ground a cause of action in tort, whereas an action for nonfeasance will sound only in contract. *Hart,* 347 Mich. at 563, 79 N.W.2d at 896–97. This misfeasance standard turns on the fact that:

> the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty action lies.

38 Am.Jur. Negligence § 17 *quoted in Hart,* 347 Mich. at 564, 79 N.W.2d at 898; *see also Clark v. Dalman,* 379 Mich. 251, 261, 150 N.W.2d 755, 760 (1967); *Chase,* 241 Mich. at 486–87, 217 N.W. at 568. Thus, the liability imposed turns on the defendant's failure to exercise skill and care in the performance of his work as required, independent of the contractual requirements undertaken, by this additional duty of care.

■ Given this long expressed policy that a contractor can be held liable for negligence for violating this independent duty of care, it seems unlikely to this Court that the Michigan Supreme Court would adopt a rule that allows a contractor to escape liability for negligence on the ground that he was following the owner's plans. The owner is usually not a construction professional and depends on the contractor to know what may or may not be safe. In this case, Bolt knew that the manner in which he installed the additional purlins was wrong. He also knew that the purpose of the additional purlins was to strengthen the roof to prevent it from collapsing under the under the weight of ice and snow. This roof was on a working warehouse, and the roof collapse that was caused by Bolt's knowingly improper installation put any person working in that warehouse at peril. Given this factual situation, it is improbable that the Michigan Supreme Court would overrule its longstanding decisions allowing a jury to hold Bolt liable in negligence for his actions and adopt a foreign rule of law which would allow Bolt to escape liability by blaming plans that did not specify, or otherwise instruct him, to install the additional purlins in the improper manner which he knowingly employed.

In sum, neither Bolt nor the owners bothered to find out the proper manner in which to install the purlins. Yet, it is not unusual in tort for there to be two or more persons whose actions may have averted the misadventure. The question for the court, then, is which of these people should be held liable

for the consequences of not averting the accident? In the words of Judge Cardozo, "Someone must be the loser; it is part of the game of life; we have to pay in countless ways for the lack of prophetic vision." B. Cardozo, *The Nature of the Judicial Process* 143 (1921). Although it is rational to expect the owners to have sought advice on the proper manner in which to install the purlins, Bolt was the only one who knew for certain that the manner in which he installed the purlins was improper. He must have been cognizant of the peril that improper installation produced for the persons and property in the building. Here no prophetic vision was required to see where duty lay.

Under Michigan law, Bolt failed to live up to a duty of care imposed on him. Furthermore, there is no indication in caselaw or treatise that Michigan's Supreme Court would be amenable to the adoption of a foreign rule of law that would result in excusing Bolt from a liability imposed on him by that court's own jurisprudence. Thus, the Magistrate's decision to adopt Illinois law and overturn the jury's verdict was incorrect. *Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532, 538 (2d Cir.1965), *cert. denied*, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966) ("[o]nce the case went to the jury, its verdict should not have been upset, if reasonable men could find [as the jury did]"). Therefore, the decision below granting JNOV on the basis of the Illinois Court of Appeal's decision in *Georgetown Township* is reversed.

### C. A District Court May Not Grant Judgment Notwithstanding the Verdict Sua Sponte

The Magistrate also erred in granting judgment as a matter of law on an issue that he raised *sua sponte*. The opinion below makes it clear that the second basis upon which the Magistrate granted JNOV, applying this Court's decision in *Garden City Osteopathic Hospital v. HBE Corp.*, 55 F.3d 1126 (6th Cir.1995) [4], was a ground not raised by either party at any time during the proceedings. Jt.App. at 23 n. 3. This Court finds that this action contravenes Fed.R.Civ.P. 50(b) and thus, must be reversed.

While it is accepted that a judge may *sua sponte* grant a directed verdict pursuant to Fed.R.Civ.P. 50(a), *see*, for example, *American and Foreign Insurance Co. v. General Electric Co.*, 45 F.3d 135, 139 (6th Cir.1995) [5], allowing a judge to *sua sponte* raise a new issue post-verdict, and proceed to overturn a jury verdict on that basis contravenes the dictates of Rule 50(b). Several circuits have ruled on this point, reversing district court decisions granting JNOV on grounds not raised by the parties in preverdict motions. *See, Murphy v. City of Long Beach*, 914 F.2d 183, 185–86 (9th Cir. 1990) (holding that "for the same reasons a party may not seek a JNOV on grounds not alleged in their motion for directed verdict, a district court may not enter a JNOV on grounds not asserted in a party's motion for directed verdict"); *Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 617 (3d Cir.1989) (incorporated into the Advisory Committee Notes on Rule 50(b); reversing district court's decision to grant JNOV where that decision was based on grounds other than those advanced in the party's motion); *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168, 171–72 (5th Cir.1985) (reversing a district court's decision granting JNOV

---

**4.** *Garden City* holds that to maintain a tort action there must be a breach of duty 'separate and distinct' from the breach of contract. 55 F.3d at 1134. This echoes Michigan law on the subject, as discussed *supra*. While the case is clearly on point, neither party discovered it. Further, the Magistrate appears to have wrongly applied the case in coming to his decision. He found that Bolt breached no duty separate and distinct from the contract and thus, no negligence action was available against him. This conclusion appears to be erroneous given that this Court has illustrated in section B, *supra*, that the law imposed a separate duty on Bolt to have a care for the

safety of others in undertaking to strengthen the roof and that Bolt breached it. For that reason, it is clear to this Court that whether or not *Garden City* applies, an action in negligence lies against Bolt.

**5.** It is worth noting that the parties exercised little discrimination while citing this Court to Rule 50 cases. However, there are major differences in the behaviors sanctioned by sections 50(a) and (b), a fact which is ultimately dispositive of this appeal.

on a ground not advanced by the party's motion as an abuse of the court's discretion and a violation of the precepts of Rule 50(b)); *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 814–15 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986) (reversing district court's decision to grant JNOV on a ground not preserved by the parties).

■ However, because there is no direct precedent on this issue in the Sixth Circuit, this Court will look to the Rule itself in making its decision. Fed.R.Civ.P. 50(b) directs that:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may *renew* its request for judgment as a matter of law by filing a motion . . . . (emphasis added).

This rule has long been read to say that a motion for directed verdict made at the close of the evidence is a prerequisite to a motion for judgment as a matter of law on the same grounds. *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir.1990); *see also Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 112 (2nd Cir.1996) (stating that Fed.R.Civ.P. 50(b) generally proscribes judgment n.o.v. on any ground not specifically raised in an earlier motion for directed verdict); *Collins v. City of San Diego*, 841 F.2d 337, 342 (9th Cir.1988) (a motion for judgment notwithstanding the verdict may be entertained only if the party has moved for a directed verdict at the close of all the evidence); *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 571–71 (1st Cir.1987) (same); *Morales v. Cadena*, 825 F.2d 1095, 1099–1100 (7th Cir.1987) (same); *Mozingo*, 752 F.2d at 172 (same); *Lowe v. Conlee*, 742 F.2d 1140, 1141 (8th Cir.1984) (same).

The Advisory Committee Notes to the 1991 Amendment clarify the reasoning for this policy:

> This provision retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence. One purpose of this concept was to avoid any question arising under the Seventh Amendment. It remains useful as a means of defining the appropriate issue posed by the post-verdict motion. *A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.* (internal citations omitted) (emphasis added).

This statement brings into sharp focus the policy of the rule: to narrowly restrict the grounds used to overturn a jury verdict by requiring that parties raise important issues *before* the case is submitted to the jury.

However, in the situation before this Court it is the trial judge, not the parties, who raised the issue after the jury had rendered a verdict. Still, it seems illogical to this Court to permit a judge to overturn a jury verdict on his own motion, where the rule specifically forbids him to grant the same motion were it brought by one of the parties. For that reason, this Court believes that Rule 50(b) is applicable to post-verdict motions whether brought by the parties or by the trial judge. In short, JNOV is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury.

The opinion below explicitly states that the Magistrate found the *Garden City* decision himself and *sua sponte* relied on it as a basis for granting JNOV. This action is in contravention of the dictates of Fed.R.Civ.P. 50(b) and for that reason must be reversed.

## D. Other Issues Raised by the Parties

The parties raise a number of other questions which do not require much, if any, attention given the disposition of the issues discussed above. Both parties raise a variety of issues regarding the Magistrate's interpretation of the rules announced in *Garden City* and *Georgetown Township*. No interpretation of these cases is necessary because neither one is applicable to the case at bar: *Garden City* was never raised by either party and cannot be considered as regards a motion for JNOV, and the Magistrate's adoption of the rule of law enunciated in *Georgetown Township* decision was incorrect, ren-

dering that rule inapplicable to the case at bar.

American also queries whether Bolt's failure to object to the jury instructions constituted a waiver of his ability to receive JNOV on the bases enunciated by the Magistrate. As it has already been determined that the opinion below was erroneous, requiring reversal of the grant of JNOV, this question is moot.

Finally, American claims that Bolt's failure to move to dismiss the negligence claim constitutes a waiver of his ability to raise the defense of failure to state a claim. This theory is presented as an alternative method of overturning the opinion below. As the preceding analysis finds that the Magistrate erred in a more fundamental manner, and reverses the decision below on that ground, it is not necessary to reach this issue.

## CONCLUSION

For the foregoing reasons, the Magistrate's opinion is **REVERSED** and the jury's verdict, holding Bolt liable for negligence relating to the improper fortification of the roof, is reinstated.

MERRITT, Circuit Judge, concurring.

In this diversity case applying Michigan law, I agree with Judge Keith that the jury verdict on negligence should be reinstated. The facts of this case could well lead a rational jury to conclude that the contractor negligently failed to attach properly the "additional purlins," as called for in the specifications, and that this error caused the roof to collapse under the snow load. It was plausible for the jury to find negligence instead of a breach of contract because the contractor did install "additional purlins," as required by the contract, but he did so in a negligent manner. The jury no doubt found what seemed to be the case: the contractor did not breach an express provision of the contract when he installed the additional purlins, but rather his performance of the contract was unreasonable in failing to properly attach the purlins so that they would hold up the roof.

Based on the record before us, I see nothing unjust about the jury's verdict and agree

that it should be upheld as an allowable application of Michigan law.

SUHRHEINRICH, Circuit Judge, dissenting.

This case went to the jury on three separate counts: 1) breach of contract; 2) breach of the implied warranty of good workmanship; and 3) negligence. The jury found for the defendant on the first two counts, but held defendant liable on the negligence count. The district court then granted, post-verdict, judgment as a matter of law for the defendant on the negligence count. Plaintiff now seeks to have the jury verdict holding defendant liable for negligence reinstated, relief which the majority grants. I write separately to express my disagreement with the decision to reinstate the jury's verdict on the negligence count.

An examination of the complaint and the jury instructions on the negligence and implied warranty of good workmanship counts reveals the standard of liability for both is substantially the same. Given this similarity, the jury's verdict in favor of defendant on the implied warranty of good workmanship count and against defendant on the negligence count raises the specter of inconsistency. The best I believe the majority could do in this case would be to hold these two verdicts inconsistent and order a new trial on the negligence count.

However, we need not order a new trial in this case. As the majority correctly notes, the general rule in Michigan provides that a party to a contract may be held liable on a tort theory for violation of a duty independent of that contract. *Mitchell v. General Motors Acceptance Corp.*, 176 Mich.App. 23, 439 N.W.2d 261, 266–67 (1989). Tort recovery under Michigan law, therefore, requires a duty *independent* from the contract itself upon which to base liability. *See, e.g., id.; Loftis v. G.T. Products, Inc.*, 167 Mich.App. 787, 423 N.W.2d 358, 362–65 (1988). In this case, plaintiff's complaint, along with the jury instructions, failed to articulate any such independent duty. Rather, plaintiff simply alleged various breaches of the implied contractual duty to perform in a workmanlike manner. Because plaintiff failed to articulate

any duty independent from the contract, plaintiff's negligence count is necessarily intertwined with the contract, rather than a separate and independent claim.

Under these circumstances, I would hold that plaintiff did not allege, nor prove, a negligence claim sufficient to submit to the jury. *See Mitchell,* 439 N.W.2d at 266–67 (failure to plead breach of any duty independent from the contract requires dismissal of negligence suit). Contrary to the majority, I would therefore affirm the decision of the district court.